**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ALENA PATTON,<br><br>Plaintiff,<br>vs.<br><br>MARKIOVIC S. CARDONA and ALMA J. CARDONA,<br><br>Defendants. | Case No.: 2:24-cv-01535-GMN-EJY<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

Pending before the Court is the Motion for Default Judgment, (ECF No. 18), filed by Plaintiff Alena Patton. Defendants Markiovic S. Cardona ("Markiovic") and Alma J. Cardona ("Alma") did not appear in this action or file a Response. For the reasons discussed below, the Court GRANTS Plaintiff's Motion for Default Judgment.

## I. BACKGROUND

In 2017, Plaintiff began renting and residing in Unit 1010 of 3400 Cabana Drive, Las Vegas, Nevada. (Compl. ¶¶ 9, 11, ECF No. 1). Unit 1010 is owned, operated, and managed as a residential rental property by Markiovic and Alma Cardona, a married couple. (*Id.* ¶ 8–11). On at least one occasion, Markiovic performed maintenance work at Unit 1010. (*Id.* ¶ 21).

On October 2, 2022, Markiovic touched Plaintiff's breasts, body, and face, in part with his mouth, as she slept in her bed. (*Id.* ¶ 20–25). Plaintiff awoke, pushed Markiovic away, and told him to stop. (*Id.* ¶¶ 23, 26). After he left, Plaintiff called the police and reported the incident. (*Id.* ¶ 27); (*see also* Police Report at 3, Ex. 5 to Mot. Default J., ECF No. 18-5).

On January 12, 2023, Markiovic was charged with "open or gross lewdness" in Las Vegas Justice Court for touching Plaintiff without her consent. (Compl. ¶ 32); (*see also* Justice Ct. R. at 4, Ex. 7 to Mot. Default J., ECF No. 18-7). He was arrested on January 18, and Alma

posted bail for him on January 19. (Compl. ¶¶ 33–34); (*see also* Justice Ct. R. at 10–11, Ex. 7 to Mot. Default J.). Markiovic ultimately pled guilty and admitted to "touching [Plaintiff's] breasts." (Compl. ¶¶ 39–41).

On February 27, 2023, Alma notified Plaintiff that her rent would increase by $300 per month. (*Id.* ¶ 35); (*see also* Rent Increase Notice at 2, Ex. 8 to Mot. Default J., ECF No. 18-8). Four days later, Plaintiff notified Markiovic and Alma about habitability problems in Unit 101, including a broken shower door, mold, electrical issues, and a leaky fridge. (Compl. ¶ 36); (*see also* Habitability Notice at 4, Ex. 9 to Mot. Default J., ECF No. 18-9). Plaintiff received a Thirty-Day "No-Cause" Notice to Quit from Markiovic and Alma on March 7, 2023. (Compl. ¶ 37); (*see also* Eviction Notice at 2, Ex. 10 to Mot. Default J., ECF No. 18-10). Markiovic attempted to physically attack Plaintiff at the final eviction hearing. (Compl. ¶ 38).

On August 21, 2024, Plaintiff filed this action against Markiovic and Alma. (*See generally id.*). In her Complaint, Plaintiff presents seven causes of action against one or both Defendants: (1) discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617; (2) discriminatory housing practices in violation of the Nevada Fair Housing Law, Nev. Rev. Stat. ("NRS") 118.010–118.120; (3) retaliatory eviction, in violation of NRS 118A.510; (4) assault; (5) battery; (6) failure to return her security deposit, in violation of NRS 118A.242(5); and (7) negligence. (*Id.* ¶¶ 44–73).

Defendants failed to answer or otherwise appear in this case. Plaintiff moved for entry of default, and the Clerk of Court entered default on December 4, 2024, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP"). (Mot. Entry Default, ECF No. 15); (Entry of Default, ECF No. 16). Plaintiff now moves for default judgment under FRCP 55(b). (Mot. Default J., ECF No. 18). Plaintiff only pursues default judgment on three claims: Count 1, discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3604, 3617; Count 2, discriminatory housing practices in violation of the Nevada Fair Housing Law, NRS

118.010–118.120; and Count 5, battery. (*Id.* 15:10–13). She abandons the remaining four claims presented in her Complaint. (*Id.*). Plaintiff seeks $1,500,000 in compensatory damages jointly and severally against both Defendants as well as $1,000,000 in punitive damages against Markiovic and $500,000 in punitive damages against Alma. (*Id.* 27:4–9).

## II. LEGAL STANDARD

Obtaining default judgment is a two-step process governed by FRCP 55. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id.* After the clerk enters the default, a party must then separately seek entry of default judgment from the court in accordance with FRCP 55(b). Fed. R. Civ. P. 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

## III. DISCUSSION

As an initial matter, Plaintiff has met the first step of the two-step process for obtaining default judgment. Pursuant to FRCP 55(a), the Clerk of the Court correctly entered default against the Defendants because they have not appeared in this case. (*See* Entry of Default). The Court first determines whether it has jurisdiction over this case before turning to the *Eitel* factors.

### A. Jurisdiction and Service

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has personal jurisdiction over Plaintiff's action because all parties are citizens and residents of Nevada. (Compl. ¶¶ 5–7). The Court has subject-matter jurisdiction because

Plaintiff presents a claim under the federal Fair Housing Act, 42 U.S.C. §§ 3604, 3617. (*See* Compl. ¶ 2). While Plaintiff's two remaining claims present questions of state law—the Nevada Fair Housing Law and common-law battery—those claims arise from the same "common nucleus of operative fact" as her federal claim, giving the Court supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Next, the Court must ascertain whether Plaintiff's service was proper. "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [FRCP 4]." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

Plaintiff's process server personally served Markiovic and Alma with Plaintiff's Complaint at their residential property on August 23, 2024. (Decl. Thomas R. Kayes ¶ 4, Ex. 1 to Mot. Default J., ECF No. 18-1); (Alma Executed Summons, ECF No. 5); (Markiovic Executed Summons, ECF No. 6). On September 19, 2025, Plaintiff's Process Server personally served Markiovic and Alma with Plaintiff's Motion for Default Judgment and related exhibits, and Plaintiff's counsel delivered the Motion and exhibits to Defendants via UPS mail service on September 9, 2025. (Cert. & Proof of Serv. 1:25–2:2, ECF No. 19); (Aff. Serv., Ex. 1 to Cert. & Proof of Serv., ECF No. 19-1); (UPS Proof of Delivery, Ex. 2 to Cert. & Proof of Serv., ECF No. 19-2). Thus, service was completed "in substantial compliance with [FRCP] 4," giving this Court jurisdiction over Defendants. *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013).

**B. *Eitel* Factors**

In determining whether to grant default judgment, courts are guided by the following seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

due to excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

**1. Possibility of Prejudice to the Plaintiff**

A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The first *Eitel* factor weighs in favor of granting Plaintiff's motion because she has no other means available to compensate her for Defendants' alleged violations. The federal Fair Housing Act "established a private right of action for damages and injunctive relief," but Defendants' failure to participate in litigation precludes Plaintiff pursuing her statutory claims on the merits. *City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112, 1118 (9th Cir. 2020), *aff'd in part & rev'd in part en banc*, 14 F.4th 1030 (9th Cir. 2021); *see also LJS&G, Ltd. v. Z's*, No. 2:16-cv-01150, 2019 WL 13211072, at *2 (D. Nev. Sept. 30, 2019). Thus, the Court finds this potential prejudice weighs in favor of granting default judgment.

**2. Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. These factors, often analyzed together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (citation modified). Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472.

Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1997). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. 3:09-cv-1085, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010). "[C]laims which are legally insufficient are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

As an initial matter, Plaintiff attaches various documents corroborating her allegations as exhibits to her Motion for Default Judgment rather than to the Complaint.[1] In many instances, these exhibits are integral to the Complaint. The Complaint "necessarily relies upon" them, their "authenticity is not in question," and "there are no disputed issues as to [their] relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013). Thus, the Court finds that the contents of these exhibits may be considered in the present motion. *See also Great Am. Ins. Co. v. Revolutionary Prods. Inc.*, No. 24-cv-1001, 2025 WL 2437530, at *8 (E.D. Cal. Aug. 25, 2025) (incorporating by reference a document "not physically attached to the complaint" in a motion for default judgment), *report and recommendation adopted*, 2025 WL 2778363 (E.D.

---

[1] Relevant attachments to the Motion to Dismiss include: an Assessor's Record of Unit 1010, (ECF No. 18-2); the Monthly Rental Agreement between Plaintiff and Defendants, (ECF No. 18-3); Plaintiff's Declaration, (ECF No. 18-4); the Police Report with details on Plaintiff's initial report and Markiovic's eventual arrest, (ECF No. 18-5); the Justice Court Record from Markiovic's criminal conviction, (ECF No. 18-7); the Rent Increase Notice, (ECF No. 18-8); Plaintiff's Habitability Notice, (ECF No. 18-9); the Eviction Notice, (ECF No. 18-10); the Unlawful Detainer Notice, (ECF No. 18-11); the Eviction Hearing Minutes, (ECF No. 18-12); Markiovic's Guilty Plea Agreement, (ECF No. 18-13); Markiovic's Sentencing Hearing Transcript, (ECF No. 18-14); the Declaration of Kyona R. Roberts, (ECF No. 18-15); and Plaintiff's Affidavit in Opposition to Summary Eviction, filed in Las Vegas Justice Court, (ECF No. 18-17).

Cal. Sept. 30, 2025); *Bernardo v. Davis Davis & Assocs. LLC*, No. 5:21-cv-2010, 2022 WL 2101910, at *3 n.2 (C.D. Cal. Mar. 31, 2022) (same).

Plaintiff presents three claims related to Defendants' actions.[2] The Court addresses each in turn.

**a. Count 1: Violation of the Federal Fair Housing Act**

Count 1 of Plaintiff's Complaint alleges that Defendants injured her by "committing discriminatory housing practices in violation of the federal Fair Housing Act," including a "hostile environment harassment based on sex in violation of 42 U.S.C. §§ 3604(b), 3617, and 24 C.F.R. § 100.600(a)(2)" and "retaliation in violation of 42 U.S.C. § 3617 and 24 C.F.R. § 100.400(c)(6)." (Comp. ¶ 45). The Court addresses each violation separately.

**i. Hostile Environment Harassment**

Section 804 of the Fair Housing Act, 42 U.S.C. § 3604(b), prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color, religion, sex, familial status, or national origin," which courts extend to prohibit discriminatory harassment that creates a hostile environment. *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1147 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1127 (2025). Federal regulations define "hostile environment harassment" as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with . . . [t]he availability, sale, rental, or use or enjoyment of a dwelling." 24 C.F.R. § 100.600(a)(2). To prevail on a claim of "hostile environment harassment" under the Fair Housing Act, a plaintiff must show that she "was subjected to (1) severe or pervasive harassment (2) that was based on a protected characteristic, . . . and (3) that the defendant is responsible for the resulting hostile housing environment." *Morris*, 104 F.4th at 1147. Plaintiff plausibly alleges all elements.

---

[2] Plaintiff abandons the remaining four counts asserted in her Complaint. (Mot. Default J. 15:12–13); (Compl. ¶¶ 51–58, 65–73).

First, Plaintiff plausibly alleges that the harassment she suffered was severe. Courts apply Title VII employment discrimination analysis in examining Fair Housing Act discrimination claims, *id.* at 1146, and it is well established that even a single instance of sexual assault can give rise to a hostile environment claim under Title VII. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (citing U.S. Equal Emp. Opportunity Comm'n, Policy Guidance on Sexual Harassment, 8 FEP Manual (BNA) 405:6690–91 (Mar. 19, 1990)). "Physical sexual assault," like Markiovic's assault on Plaintiff, is "routinely . . . prohibited as sexual harassment." *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002). Plaintiff plausibly alleges "touching of intimate body parts" and a "threat of physical harm," together sufficient to support a hostile environment claim. *Salisbury v. Hickman*, 974 F. Supp. 2d 1282, 1291 (E.D. Cal. 2013) (citing *DiCenso v. Cisneros*, 96 F.3d 1004, 1008–09 (7th Cir. 1996)). Her allegations are corroborated by Markiovic's guilty plea in Las Vegas Justice Court, in which he admitted to touching Plaintiff's breasts. (Compl. ¶ 41).

Second, Plaintiff plausibly alleges that Markiovic's harassment was based on a protected characteristic: her sex. Under the Fair Housing Act, "the evidence need not prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a motivating factor." *Morris*, 104 F.4th at 1140 (citation modified). Sexual harassment is a form of sex discrimination prohibited by the Fair Housing Act. *Swenson v. Potter*, 271 F.3d 1184, 1191 (9th Cir. 2001) (applying this proposition in the Title VII context). Because Plaintiff plausibly alleges that she was sexually assaulted, she plausibly alleges that she endured sex discrimination.

Third, Plaintiff plausibly alleges that Defendants are responsible for the resulting hostile housing environment. She plausibly alleges that Markiovic is responsible, as a person is "directly liable for [his] own conduct that results in a discriminatory housing practice." 24 C.F.R. § 100.7(a)(1)(i). Plaintiff's plausible allegations also establish Alma's responsibility for

Markiovic's actions. The Fair Housing Act provides for vicarious liability, *Meyer v. Holley*, 537 U.S. 280, 285 (2003), as do its implementing regulations, "regardless of whether the person knew or should have known" of the misconduct. 24 C.F.R. § 100.7(b). Property owners, "including spouses who co-own property, have been held vicariously liable for the discriminatory actions of their rental agents." *United States v. Nolen*, No. 2:23-cv-00320, 2025 WL 790243, at *2 (E.D. Cal. Mar. 12, 2025); *see also Bischoff v. Brittain*, 183 F. Supp. 3d 1080, 1092 (E.D. Cal. 2016). Alma was a co-owner of the property, (Compl. ¶ 9), and she consented to Markiovic taking on significant oversight and management roles: he performed work on the property, communicated with Plaintiff, signed her rental agreement, and was the recipient of her rent checks. (Compl. ¶¶ 21, 28, 31); (Monthly Rental Agreement at 2, 4–5, Ex. 3 to Mot. Default J., ECF No. 18-3). Consequently, Plaintiff establishes a plausible claim that Markiovic and Alma are both responsible for her hostile housing environment.

Because Plaintiff plausibly alleges that she "was subjected to (1) severe or pervasive harassment (2) that was based on a protected characteristic, . . . and (3) that . . . [D]efendant[s] [are] responsible for the resulting hostile housing environment," *Morris*, 104 F.4th at 1147, the second and third *Eitel* factors favor default judgment on her federal hostile housing environment claim.

**ii. Retaliation**

42 U.S.C. § 3617 prohibits "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any person . . . on account of his having exercised or enjoyed . . . any right granted or protected by" § 3604. "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). Plaintiff plausibly alleges all elements.

First, Plaintiff plausibly alleges that she engaged in a protected activity: reporting Markiovic's unlawful conduct to the police. (Compl. ¶ 27). Federal regulations protect "report[ing] a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(6). Courts have found that reporting a sexual assault to law enforcement is protected activity. *See, e.g.*, *Jay v. Grand Mgmt. Servs., Inc.*, 783 F. Supp. 3d 1257, 1266, 1276 (D. Or. 2025). Plaintiff attaches the police report to her Motion for Default Judgment, corroborating her claim. (*See generally* Police Report, Ex. 5 to Mot. Default J.).

Second, Plaintiff plausibly alleges that Defendants subjected her to adverse actions: the rent increase, followed by the eviction. (Compl. ¶ 35, 37). A rent increase can be an adverse action. *See, e.g.*, *Manzo v. Hall Vineland Prop., LLC*, No. C 10-05279, 2011 WL 13243728, at *1 (N.D. Cal. Mar. 18, 2011). Eviction likewise constitutes an adverse action under the federal Fair Housing Act. *See, e.g.*, *Gilvin v. Veneto Tuscan LLC*, No. 2:26-cv-00370, 2026 WL 594673, at *2 (D. Nev. Mar. 3, 2026); *Scoggins v. Falcon Court*, No. 1:24-cv-00188, 2025 WL 942819, at *2 (E.D. Cal. Mar. 28, 2025). Plaintiff attaches the rent increase notice and eviction notice to her Motion for Default Judgment, corroborating her claim. (*See generally* Rent Increase Notice, Ex. 8 to Mot. Default J.); (Eviction Notice, Ex. 10 to Mot. Default J.).

Third, Plaintiff plausibly alleges that a causal link exists between her police report and the rent increase or eviction. The "temporal proximity" between a protected activity and an adverse action can establish a prima facie case of retaliation under the Fair Housing Act. *Gilvin*, 2026 WL 594673, at *1. Markiovic was arrested on January 18, 2023, thereby notifying him and Alma that Plaintiff had reported his misconduct (Compl. ¶ 33); (*see also* Police Report at 3, Ex. 5 to Mot Default J.). Plaintiff received notice of the rent increase on February 27, 2023, 41 days later. (Rent Increase at 2, Ex. 8 to Mot. Default J.). Alma served Plaintiff with a Thirty-Day "No Cause" Notice to Quit on March 7, 2023, nine days after increasing her rent and 49 days after Markiovic's arrest. (Eviction Notice at 2). A six- to seven-week gap between when

Defendants learned of Plaintiff's protected activity and when they took the adverse actions "supports an inference of causation." *Gilvin*, 2026 WL 594673, at *1 (finding sufficient temporal proximity from 30-day gap); *see also McGhee v. Forest Ridge Apartments LLC*, No. CV-22-08155, 2022 WL 23037031, at *2 (D. Ariz. Sept. 8, 2022) (finding causation from three-month gap); *McGrann v. Orange Cnty. Hous. Auth.*, No. 8:25-cv-02151, 2026 WL 1981408, at *3 (C.D. Cal. June 15, 2026) (finding a causal link from a gap of approximately one month), *report and recommendation adopted*, 2026 WL 1980820 (C.D. Cal. July 7, 2026); *but see Santos v. Cnty. of Humboldt*, No. 22-cv-07485, 2023 WL 6882748, at *6 (N.D. Cal. Oct. 18, 2023) (finding eight-month gap to be insufficient evidence of causation).

If a plaintiff establishes a prima facie case of retaliation under the Fair Housing Act, "'the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision.'" *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 670 (9th Cir. 2025). Defendants, by neglecting to respond or appear in this action, failed to provide a nondiscriminatory reason for raising Plaintiff's rent or evicting her. In addition, as Plaintiff was evicted under a "No Cause" Notice, there is no evidence before the Court that Defendants articulated a nondiscriminatory reason at any point in the pendency of Plaintiff's eviction proceedings. (*See generally* Eviction Notice, Ex. 10 to Mot. Default J.); (Eviction Hearing Minutes, Ex. 12 to Mot. Default J., ECF No. 18-12).

Because Plaintiff plausibly alleges that "(1) [s]he engaged in a protected activity; (2) the [D]efendant[s] subjected [her] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action," *Walker*, 272 F.3d at 1128, the second and third *Eitel* factors favor default judgment on her federal Fair Housing Act retaliation claim.

**b. Count 2: Violation of the Nevada Fair Housing Law**

Count 2 of Plaintiff's Complaint alleges that, for the same reasons as her federal Fair Housing Act claim, Defendants violated the Nevada Fair Housing Law, NRS 118.010–118.120. (Compl. ¶ 50).

The Nevada Fair Housing Law "also prohibits discriminatory practices and mirrors" the federal Fair Housing Act. *Torres v. Rothstein*, No. 2:19-cv-00594, 2020 WL 2559384, at *3 (D. Nev. May 20, 2020). The two statutes are "substantively similar." *Vonseydewitz v. Moellinger*, No. 90307-COA, 2026 WL 1027584, at *1 (Nev. Ct. App. Apr. 15, 2026). Thus, "for the same reasons that Plaintiff[] stated a plausible claim for relief under the federal [Fair Housing Act], Plaintiff[] state[s] a colorable claim for relief under Nevada's [F]air [H]ousing [L]aw." *Dogbe v. Lakes at Lemmon Valley, LLC*, No. 3:24-cv-00283, 2025 WL 1368886, at *7 (D. Nev. May 12, 2025). The second and third *Eitel* factors therefore favor default judgment on Plaintiff's Nevada Fair Housing Law claim.

**c. Count 5: Battery**

Count 5 of Plaintiff's Complaint asserts a battery claim against Markiovic. Under Nevada law, "'a battery is an intentional and offensive touching of a person who has not consented to the touching.'" *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1376 (D. Nev. 2024) (quoting *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016)). Plaintiff alleges that Markiovic made "offensive and harmful contact with her" intentionally and without her consent. (Compl. ¶ 60). She presents a plausible, detailed account of Markiovic's behavior on October 2, 2022, including that he touched her breasts, body, and face, in part with his mouth, as she slept, without her consent or permission. (*Id.* ¶¶ 22–26).

Further corroborating Plaintiff's allegations, Markiovic admitted to touching Plaintiff's breasts in his guilty plea for "open or gross lewdness," NRS 201.210, in Las Vegas Justice Court. (*Id.* ¶¶ 40–41). "Open or gross lewdness" requires "intentional sexual conduct . . . with

the intent that the acts be offensive to the victim." *Lytle v. State*, No. 49819, 2009 WL 1490938, at *6 (Nev. Jan. 27, 2009). By admitting guilt to "open or gross lewdness," Markiovic admitted his intent to commit an act offensive to Plaintiff.

Because Plaintiff plausibly alleges that she suffered non-consensual intentional and offensive touching, the second and third *Eitel* factors favor default judgment on her battery claim.

**3. The Sum of Money at Stake in the Action**

The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at 1471. The Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-cv-00071, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010)). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Landstar Ranger*, 725 F. Supp. 2d at 921.

Plaintiff seeks $1,500,000 in compensatory damages jointly and severally against both Defendants as well as $1,000,000 in punitive damages against Markiovic and $500,000 in punitive damages against Alma. (Mot. Default J. 27:4–9). For the reasons discussed *infra* Section (III)(C), Plaintiff sufficiently establishes that she is entitled to a compensatory award of $1,500,000 for her emotional distress since the sexual assault. Although her request for punitive damages is unsupported, the amount of compensatory damages is proportionate to the harm caused by Defendants. This factor therefore weighs in favor of default judgment.

**4. Possibility of a Dispute Concerning Material Facts**

The fifth *Eitel* factor evaluates the possibility of dispute as to any material facts in the case. *PepsiCo*, 238 F. Supp. 2d at 1177. Once the Clerk of Court enters default, all well-pleaded facts in complaint, except those relating to damages, are taken as true. *Id.* Here, Plaintiff filed a well-pleaded Complaint alleging the facts necessary to establish her claims, and the Clerk entered default against Defendants. (*See* Entry of Default). Consequently, no genuine dispute of material fact exists which would preclude the entry of default judgment.

**5. Excusable Neglect**

The sixth factor considers whether Defendants' defaults are due to excusable neglect. *Id.* If a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

Defendants were properly served with Plaintiff's Complaint, (Alma Executed Summons); (Markiovic Executed Summons), and her Motion for Default Judgment (Cert. & Proof of Serv.). Thus, Defendants had notice of Plaintiff's intent to pursue a judgment against them but neglected to appear or otherwise defend. No evidence before the Court suggests that Defendants' failure to respond was due to excusable neglect. *See, e.g.*, *BMW of N. Am., LLC v. Quality Star Benzz LLC*, No. 2:12-cv-00889, 2013 WL 1338233, at *5 (D. Nev. Mar. 29, 2013). This factor therefore weighs in favor of default judgment.

**6. Policy for Deciding on the Merits**

The final factor weighs against default judgment. As the Ninth Circuit explained in *Eitel*, "default judgments are ordinarily disfavored." 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* But the existence of FRCP 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at

1177 (internal quotations omitted). Defendants' failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *See id.*

Evaluating the *Eitel* factors as applied to this case, the Court finds that the majority of the factors support the entry of default judgment and concludes that the entry of default judgment against Defendants is appropriate.

**C. Relief Requested**

After determining that a party is entitled to entry of default judgment, the Court must determine the terms of the judgment to be entered. A default judgment cannot differ "in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(b).

Plaintiff seeks compensatory and punitive damages against Defendants. (Mot. Default J. 23:11–12).[3] The Court addresses each form of damages in turn.

**1. Compensatory Damages**

Plaintiff seeks $1,500,000 in compensatory damages jointly and severally against Markiovic and Alma. (Mot. Default J. 27:6–7). She claims that the amount she requests "is fair and reasonable compensation" for "the assault, the retaliation, and its impact on her life." (*Id.* 24:15). This amount compensates Plaintiff for her "mental and emotional pain and suffering," (*id.* 24:9–10); it is purely non-economic.

The federal Fair Housing Act authorizes courts to award compensatory damages for discriminatory housing practices. 42 U.S.C. § 3613(c)(1). Under the statute, a plaintiff is entitled to damages for "any unusual level of anxiety, embarrassment, or humiliation suffered . . . as a result of a defendant's discriminatory actions." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1172 (9th Cir. 2013). Similarly, the Nevada Fair Housing Law

---

[3] The Motion for Default Judgment, but not the Complaint, specifies the amount of damages sought. (Mot. Default J. 24:8–10, 26:22–23, 27:4–8); (Compl. 7:26–8:5). However, FRCP 54(c) allows the Court to award actual damages in a default judgment to a party that sought in its pleadings an amount to be determined at trial. *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 553 (9th Cir. 2025).

allows courts to award "actual damages" for alleged violations. Nev. Rev. Stat. 118.120. While awards in actions solely implicating the Fair Housing Act are generally much lower than Plaintiff's requested amount, jury awards—and correspondingly, court awards—rise by several orders of magnitude in cases involving sexual harassment or assault claims. *See United States v. Salazar*, No. 1:23-cv-01282, 2024 WL 3858714, at *11 (E.D. Cal. Aug. 19, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 4589971 (E.D. Cal. Oct. 28, 2024).

"In determining damages, a court can rely on the declarations submitted by the plaintiff." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing Fed. R. Civ. P. 55(b)(2)), *overruled on other grounds*, *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.* (9th Cir. 2016). A plaintiff's own credible testimony describing her psychological suffering is sufficient to support an award of damages for emotional distress. *See, e.g.*, *Pac. Shores Props.*, 730 F.3d at 1172 (also citing similar results in other circuits). In her Declaration, Plaintiff describes the ways that the assault affected her "emotionally, physically, professionally, financially, and in [her] relationships, as well as [her] overall well-being." (Decl. Alena Patton ¶ 46, Ex. 4 to Mot. Default J., ECF No. 18-4). She professes mental and physical health struggles, including "feelings of guilt and shame"; a constant "sense of fear, distress, and helplessness"; "recurring flashbacks and intrusive thoughts"; "anxiety, depression, panic attacks, and symptoms of PTSD"; "persistent physical ailments like chronic pain, migraines, digestive issues, body tension, and overall fatigue"; "nightmares, insomnia, and restless nights"; and "a deep sense of isolation." (*Id.* ¶¶ 47–57). She has experienced negative consequences at work, including "a sense of stigma and judgment" and declining "productivity and ability," which "cost [her] both professionally and financially." (*Id.* ¶¶ 62–64). In the long term, Plaintiff claims that "[t]he stress from this entire situation has had a direct impact on [her] livelihood and [her] future stability," including by preventing her from "focus[ing] or study[ing] effectively" for the LSAT as she had hoped to attend law school. (*Id.* ¶¶ 65–67).

Plaintiff contends that there is "substantial support" for her requested amount of compensatory damages "in recent, comparable decisions." (Mot. Default J. 24:17–18). She cites recent court decisions in sexual assault cases awarding compensatory awards ranging from $250,000 to $1,700,000. (*Id.* 24:17–25:10). In *Doe v. Dinnis*, No. 18-cv-05393, 2020 WL 9422326 (N.D. Cal. Feb. 24, 2020), *report and recommendation adopted*, 2020 WL 9422398 (N.D. Cal. Apr. 7, 2020), the court awarded $500,000 in non-economic damages in a default judgment action "given the assault alleged and the evidence of the emotional distress [the plaintiff] suffered as a result." *Id.* at *9. The plaintiff in that case, like Plaintiff in the present action, submitted a declaration asserting that she was sexually assaulted on a single occasion by a person who exploited a professional relationship, resulting in extreme anxiety, panic attacks, and mental health issues. *Id.* at *1–2, 6. In *Ramser v. Laielli*, No. 15-cv-2018, 2017 WL 4169721 (S.D. Cal. Sept. 20, 2017), the court awarded $1,500,000 in non-economic damages in a default judgment action to compensate the plaintiff "for the pain and suffering she has suffered since the rape." *Id.* at *2. The court relied on a declaration from the plaintiff "describing her experiences since the rape" and "cit[ing] to cases affirming awards of non-economic damages similar to or greater than this amount in other sexual assault cases." *Id.* Similarly, Plaintiff sufficiently establishes the severity of her emotional distress since the sexual assault and requests an award within the range awarded by federal courts in this circuit for similar claims.

While an award of $1,500,000 would place Plaintiff towards the higher end of the spectrum of emotional distress damages in sexual assault cases, a substantial award is justified because the assault was committed in her home by a person in a position of authority. "Courts have recognized that [sexual] harassment in one's own home is particularly egregious." *Salisbury*, 974 F. Supp. 2d at 1292 (citing *Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010)). In addition, "sexual harassment by someone in a position of authority is more likely to

be emotionally and psychologically threatening." *Id.* at 1293 (citing *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057 (9th Cir. 2007)). Courts have acknowledged that sexual battery or harassment in one's own home by a landlord or property manager, as Plaintiff alleges, undermine a person's sense of safety and security. *See, e.g.*, *id.* at 1293; *Beliveau v. Caras*, 873 F. Supp. 1393, 1398 (C.D. Cal. 1995). That principle is reflected in the damages awarded in sexual assault cases: *Ramser* awarded $1,500,000, a comparatively high amount, for an assault that took place in the plaintiff's living quarters. 2017 WL 4169721, at *1.

Based on her Declaration and comparisons to non-economic damage awards in similar cases, Plaintiff sufficiently establishes her entitlement to $1,500,000 in compensatory damages from Defendants. The Court accordingly grants Plaintiff's request for $1,500,000 jointly and severally against both Defendants.

**2. Punitive Damages**

Plaintiff seeks $1,000,000 in punitive damages against Markiovic for "malicious and oppressive sexual assault . . . and his attempted in-court assault at the eviction hearing" and $500,000 in punitive damages against Alma for retaliation. (Mot. Default J. 26:11–27:2).

The federal Fair Housing Act authorizes courts to award punitive damages for discriminatory housing practices. 42 U.S.C. § 3613(c)(1). "To obtain punitive damages under [the Act], a plaintiff must show that defendants acted with reckless indifference," meaning "discriminat[ion] in the face of a perceived risk that [their] actions will violate federal law." *Sanzaro*, 364 F. Supp. 3d at 1180 (citing *Fair Hous. Council of San Diego v. Penasquitos Casablanca Owner's Ass'n*, 381 F. App'x 674, 676–77 (9th Cir. 2010)). Punitive damages are appropriate in a Fair Housing Act action "when a defendant's conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous indifference to the federally protected rights of others." *See, e.g.*, *Skochko v. Mercy Hous., Inc.*, No. 20-cv-08659, 2022 WL

3357836, at *14 (N.D. Cal. Aug. 15, 2022) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)).

Unlike her request for compensatory damages, however, Plaintiff's request for punitive damages includes no comparisons to awards in similar cases. (Mot. Default J. 26:8–27:2). Instead, Plaintiff cites generally to caselaw on punitive damages, some of which is from outside the Ninth Circuit, and to the Restatements. (*Id.* 26:8–21). "When punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default." *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016). Because Plaintiff does not provide sufficient support for her desired amount, her request for punitive damages is denied without prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment, (ECF No. 18), is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment shall be entered as follows: $1,500,000.00 jointly and severally against Defendants Markiovic S. Cardona and Alma J. Cardona.

**IT IS FURTHER ORDERED** that Plaintiff may re-file a renewed motion for default judgment, within 60 days of this Order, on the issue of remaining punitive damages sought.

**DATED** this 18 day of September, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT